```
1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF SOUTH CAROLINA
2                           CHARLESTON DIVISION

3   UNITED STATES OF AMERICA        :
                                    :
4           vs.                     :
                                    :
5   KHIRY BROUGHTON                 :     2:16 – CR – 122

6

7
          Sentencing in the above-captioned matter held on
8
    Wednesday, November 29, 2017, commencing at 2:38 p.m.,
9
    before the Hon. David C. Norton, in the United States
10
    Courthouse, Courtroom II, 81 Meeting St., Charleston,
11
    South Carolina, 29401.
12

13

14  APPEARANCES:

15              LESHIA LEE-DIXON, ESQ., Office of the U.S.
                Attorney, 1301 New York Ave. NW, Washington, D.C.,
16              appeared for the Government.

17              TAMEAKA A. LEGETTE, ESQ., 14th Circuit
                Solicitor's Office, P.O. Box 366, Walterboro, SC,
18              appeared for the Government.

19              JOHN L. DUFFY, III, ESQ., P.O. Box 71346,
                North Charleston, SC, appeared for Broughton.
20

21

22
            REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
23       Official Court Reporter for the U.S. District Court
                            P.O. Box 835
24                      Charleston, SC  29402
                           843/723-2208
25
```

1    MS. LEE-DIXON: Your Honor, this is the matter of
2  2:16-CR-122, United States versus Khiry Broughton. He's here
3  today for sentencing with his counsel, John Duffy.
4    THE COURT: Mr. Broughton pleaded guilty back on
5  June 30th and I accepted his plea at that time, pursuant to an
6  11(c)(1)(C) plea.
7    Thereafter, the probation officer prepared a presentence
8  report which has been prepared and submitted to counsel for
9  the Government and the defendant.
10   It's my understanding that -- Are there any objections
11 that haven't been accommodated yet? Mr. Duffy?
12   MR. DUFFY: Your Honor, I filed some objections as to
13 restitution and as to the leadership role. That was part of
14 our plea agreement that I could contest that. We are
15 withdrawing those objections at this time. That was as far as
16 I've gotten, Your Honor.
17   I will say that there are a few things that factually I
18 think the Government has responded to in their memo. I did
19 not file a memo after our conference on Monday, so I -- if you
20 wanted me to explain now, I'll be happy to explain now, or --
21 as to the other indictments, that if they weren't in my facts
22 for the plea, I didn't disallow them, I just -- we couldn't
23 admit them.
24   THE COURT: Okay. So based on that, it's my
25 understanding everybody has had plenty of time to go over the

1    presentence report and there are no objections to it, is that
2    correct?
3         MS. LEE-DIXON:  That's correct, Your Honor.  Just to
4    clarify for the record as it relates to the objections
5    submitted by defense counsel that are withdrawn, there was
6    also an objection to a reference, I believe it was in
7    paragraph 87, as it relates to a reference -- it's in the
8    personal and family data.
9         THE COURT:  Right.
10        MS. LEE-DIXON:  Objected to the inclusion of Kenneth
11   Bailey, or Mr. Bailey, who is Mr. Broughton's brother.  I can
12   address that.  I think I submitted my memo which addresses
13   that objection, I think it's properly there, based upon the
14   evidence that we have.
15        THE COURT:  All right.
16        MR. DUFFY:  Your Honor, I will address that.  We
17   received, I believe last week from -- might have been a few
18   weeks before -- additional discovery from the Government that
19   I think cures that, and we're not objecting to that.  I
20   believe the video they showed takes care of that issue.
21      There was one matter, Your Honor, I believe it is
22   paragraph 12 of the presentence report.  I think the
23   Government did raise an objection where I think the facts do
24   state that the Cowboys did, in fact, kill ST at the Starlight
25   Lounge.  And I believe it's -- especially speaking with the

```
 1   probation agent that the evidence actually showed that the
 2   victim was standing next to where the Cowboys were, and
 3   that -- I think it would have been virtually impossible for
 4   anyone to have shot her.  So that's my reason for objecting to
 5   that particular fact, the way it was characterized.
 6             THE COURT:  Of course, the probation officer also
 7   has, in paragraph 12, that he disputes that he or any
 8   co-defendant killed ST.
 9             MR. DUFFY:  Yes, Your Honor.
10             MS. LEE-DIXON:  And for the record, we didn't allege
11   that any member of the Cowboys who were charged actually
12   committed that homicide.
13             THE COURT:  Okay.
14             MR. DUFFY:  It was on my mind.  I just didn't want it
15   to --
16             THE COURT:  All right.  Anything else that hasn't
17   been accommodated, Mr. Duffy?
18             MR. DUFFY:  No, sir.
19             THE COURT:  Mr. Broughton, did you have plenty of
20   time to go over your presentence report with your lawyer?
21             THE DEFENDANT:  Yes, sir.
22             THE COURT:  Okay.  Inasmuch as all parties have had
23   access to the report and there are no objections to it, I'll
24   ask the clerk to file the report under seal.  In the event of
25   an appeal, the clerk will make the report available to
```

1  counsel.  Additionally, the probation officer made a
2  recommendation which will remain under seal until further
3  order of the Court.
4     In view of the fact there are no objections to the factual
5  statements contained in the presentence report, I'll adopt
6  those statements as the findings of fact for the purposes of
7  sentencing.  Having done so, it looks like it's offense level
8  33, criminal history category three, which is 168 to 210
9  months imprisonment, one to three years supervised release,
10 $35,000 to $250,000 fine, and $299,608.06 in restitution.
11    Does anyone have any objection to the facts which been
12 adopted for the purposes of sentencing or the guideline
13 ranges?
14         MR. DUFFY:  No, Your Honor.
15         MS. LEE-DIXON:  No, Your Honor.
16         THE COURT:  It's an 11(c)(1)(C) plea for 108 months,
17 but I'll be glad to hear any other position the Government
18 has.
19         MS. LEE-DIXON:  Your Honor, we submitted our memo.
20 Unless you have any questions for us, we would submit it.
21         THE COURT:  Anything, Mr. Duffy, do you want to say?
22         MR. DUFFY:  No, Your Honor, I did -- well, as far as
23 placement in programs, I did want to address that, but as far
24 as the plea of 108 months, the sentencing, we're going to ask
25 the Court to endorse that.

1            THE COURT:  Go ahead and address the rest of what
2    your concerns are.
3            MR. DUFFY:  Yes, sir.  My client, as noted in the
4    presentence report, and I believe in some of the other
5    documents we've had in this case, has mental health issues.
6    He's got three documented suicide attempts.  I would ask that
7    he receive mental health counseling.
8         It's also, I believe, in the presentence report, that he
9    is and has been in the past, a frequent user and abuser of
10   marijuana and of alcohol.  I would ask that he be allowed to
11   take any substance abuse programs.
12        He has only had one job, I believe, in his life, and that
13   was at Burger King.  He lacks skills, he lacks trade ability,
14   and I would ask that he be allowed to enroll in any program
15   that allows him to learn a trade, learn a skill, and become a
16   productive and marketable member of our society once he's
17   released from prison.
18        Finally, Your Honor, I understand the Government's
19   position about housing of the co-defendants together.  But we
20   would ask, because he has two small children, we would ask
21   that he be housed as close as practical to Walterboro, either
22   Estill, Williamsburg, in the vicinity, Judge.
23           THE COURT:  Edgefield, Jesup; those are the four
24   closest anyway.
25           MR. DUFFY:  Yes, sir.

1       THE COURT: All right. Mr. Broughton, you have a
2  right to say anything you'd like with regard to your sentence.
3  If you want to say anything, I'd be glad to hear from you; if
4  you don't want to say anything, you don't have to.
5       THE DEFENDANT: Yes, sir.
6       MR. DUFFY: He wrote a statement, Judge. He'd like
7  address it. I've read it.
8       THE COURT: That's fine.
9       THE DEFENDANT: The reason we're here today is
10 because of me having chosen to take full responsibility for my
11 actions. I do so with no reservations, and I'm here to accept
12 the consequences of my guilty plea. There are a lot of
13 factors involved in this case that I want to say on today and
14 I'll be brief.
15    First want the Court to know and the record to reflect
16 that the Cowboys never were meant to what the Government has
17 called a street gang. The name was a source of pride for me
18 and others in this country. Because history was so what
19 cowboys have meant, and they protect the weak and innocent and
20 standing up to the bad guy. Being trendsetters in the area as
21 well as role models, historically that's what cowboys have
22 always stood for. And I'm here to tell you today that's what
23 the name and ideology behind the group derived from.
24    Then there came the distraction and the number one on top
25 of all was drug abuse and addiction. On October 26, the

1  President confirmed what many have known for some time in this
2  country of ours, opiate addiction is a public health emergency
3  and a tragic epidemic in our society.
4      This epidemic knows no demographic or social boundaries,
5  it makes victims of both black and white, rich and poor, young
6  and old.
7      I first became a victim when I shot myself.  I just went
8  downhill.  I began taking painkillers, and they're addictive.
9  Qualities of the medicine took control.  That's when everybody
10 that could go -- that's when everything that could go wrong
11 did go wrong.  And as a result, the co-defendants in this
12 indictment and myself became functioning addicts to pills,
13 doing whatever we felt like we needed to do to support this
14 addiction, no matter the cost.
15     Today I am here to take responsibility for this.  I am
16 also here to tell you, Your Honor, that I have overcome this
17 enemy.  I am no longer a victim, but a survivor.  I plan on
18 letting my story and the stories of others be the foundation
19 of my continuing recovery and testimony.
20     When I'm released, I will do whatever it takes to make
21 sure my sons don't go through what I did.  I will also begin
22 to mentor as many young kids who are headed down the road I
23 went and find a lifestyle to be alone.  I am dedicated to
24 strengthening my community and society at large.  I have two
25 young boys that the Court know of, but I've also helped their

1    mother raise their big brother since the day he was born.  I
2    have three young boys who looks up to me and thinks highly of
3    me.  I do not wish to have them thinking it's okay to be in
4    and out of trouble ending up in jail, and I don't want them to
5    even attempt to go down the road I went.  I would do
6    everything in my power to better myself for the future, to
7    make them see things clearly in the future.
8         I want to be there for my family, including mother,
9    grandmother, aunts, nieces and nephews.  I play a big part in
10   my family, and I know it hurts them more than it hurt me that
11   I am going through this.
12        Your Honor, I'm not asking to be released, because I know
13   it's consequences for my actions.  But for the two years I've
14   already sat, I really became a better person.  I cleared my
15   mind more than I ever have, so I'm not the same person I was
16   before.
17        So, Your Honor, I'm asking, can you please be lenient on
18   my sentence today and not take me away from my family too long
19   so my kids don't outgrow their childhood without my word or
20   wisdom and fatherhood.
21        I would like to apologize to my family for taking them
22   through all this.  I'm sorry, and I love you.
23        As well as to the Court, I apologize for my actions and
24   trouble.  Thank you for the time.
25              THE COURT:  Thank you, Mr. Broughton.

1          Anything else, Mr. Duffy?

2                  MR. DUFFY:  No, sir.

3                  THE COURT:  Anything else from the Government?

4                  MS. LEE-DIXON:  No, Your Honor.

5                  THE COURT:  Okay.  The sentence you get is the

6    sentence you bargained for.  But let me tell you what would

7    have happened, had your lawyer not done such a good job for

8    you.  I would have given you every minute of 210 months.  I

9    mean, you were the prime mover of this Cowboys.  You were

10   shooting up the town, you know, using guns, drugs.  You were

11   the main man.  Okay?  And because you were the main man, you

12   should get the main sentence, but you didn't get the main

13   sentence because of the good work of your lawyer.  So I don't

14   know how he did it, I don't know, he's a good lawyer, but I

15   didn't know he was a magician.  Because what he did for you

16   was magic.  All right?  So you need to thank him, all right?

17        But let me tell you what's going to happen.  Once you get

18   out after 108 months, and you get credit for time you served,

19   you're going to go back to Walterboro.  And I go to Walterboro

20   a lot, and I know a lot of people in Walterboro.  And if you

21   spit on the sidewalk, throw chewing gum on the ground, get in

22   any drugs, any pot, any guns, any domestic violence, any petty

23   larceny, anything, any shoplifting, you'll be back before me,

24   and I will give you every minute I can.  Okay?

25        So if you tell me you've changed, you want to go back to

1    your family, you're going to have that chance.  But once you
2    get back there, if you fall back into what you've been doing,
3    you're going spend the rest of your life in jail, and I'll
4    make sure of that.
5        You understand me?
6            THE DEFENDANT:  Yes, sir.
7            THE COURT:  Okay.  Having calculated and considered
8    the advisory sentencing guidelines and the relevant statutory
9    factors, it is the judgment of the Court the defendant, Khiry
10   Broughton, is hereby committed to the custody of Bureau of
11   Prisons for 108 months, $100 special assessment, $299,608.06
12   restitution.
13       Upon release, supervised release for three years,
14   mandatory standard conditions, following special conditions.
15   Restitution at the rate of $100 a month beginning 90 days from
16   release.  Payments shall be made to Clerk, United States
17   District Court, P.O. Box 835, Charleston, 29402.  Interest on
18   restitution is waived.
19       Shall be subjected to placement in the financial
20   litigation unit wage garnishment program for the purpose of
21   collecting restitution.  Shall provide the probation office
22   with access to any requested financial information, including,
23   but not limited to income tax returns.  Prohibited from
24   opening any new lines of credit without the prior written
25   approval of the probation office.  Shall enroll in and

1     complete an accredited education program as approved by
2     probation office with the objective of obtaining a G.E.D.,
3     unless he's already gotten one during incarceration.  Shall
4     participate in a program of testing for substance abuse as
5     directed by the probation office, and contribute to the cost
6     of the testing, not to exceed the amount determined reasonable
7     by the probation officer's sliding scale for services, and
8     cooperating in securing any applicable third-party payment,
9     such as insurance or Medicaid.
10       I recommend the closest institution for which he qualifies
11    to Walterboro, South Carolina.  I recommend that he be allowed
12    in mental health programs, substance abuse, get skills,
13    education.  Obviously he can read and write, because he just
14    did, you know.  And so he can get his GED.  He has a degree
15    from some unaccredited school, but he'll be much more
16    marketable if he gets a G.E.D., because everybody knows what
17    that is, all right?
18            MR. DUFFY:  Yes.
19            THE COURT:  Does anyone have an objection to the form
20    of that sentence?
21            MR. DUFFY:  Not from the defense.
22            THE COURT:  Besides me.
23            MS. LEE-DIXON:  Your Honor, I just would ask, I just
24    want to double check as it relates to -- we have one other
25    defendant relative to the conduct that includes Mr. Broughton,

1  that I think is going to be sentenced on December 15th.  So I
2  would ask the Court to order that the restitution be joint and
3  several.
4          THE COURT:  Okay.  Joint and several with the other
5  defendant.  With DaShawn?
6          MS. LEE-DIXON:  Yes.
7          THE COURT:  Are we dismissing some other charges?
8          MS. LEE-DIXON:  Yes, Your Honor, counts ten and count
9  11.
10         THE COURT:  Dismiss those.
11    Mr. Broughton, you've got 14 days from today to appeal
12 from this sentence.  If you can't afford a lawyer, I'll
13 appoint Mr. Duffy to represent you.
14    Good luck.
15
16      (Court adjourned at 2:52 p.m.)
17
18
19
20
21
22
23
24
25

1       REPORTER'S CERTIFICATION

3       I, Debra L. Potocki, RMR, RDR, CRR, Official Court
4  Reporter for the United States District Court for the District
5  of South Carolina, hereby certify that the foregoing is a true
6  and correct transcript of the stenographically recorded above
7  proceedings.

S/Debra L. Potocki
_____

Debra L. Potocki, RMR, RDR, CRR